Matthew Vanna for the State of Manuel Avila. The crux of this case is whether Nevada's survival statute, NRS 41103, allows Manuel Avila's claims to proceed forward. And I'd like to address the contract claim first. There was a large judgment against Mr. Avila and the contract in dispute allowed for liability coverage of $300,000. This is what really confused me. I mean, it seems to me there were two things pulling in different directions. On the one hand, ordinarily, in a contract claim, you have expectation damages, and if they had promised to pay $300,000, and there was a judgment for more than that, then you'd think they owe him $300,000. On the other hand, they didn't. If the plaintiff is not entitled, their ultimate liability is to pay the liability. And if the liability has been settled at less than $300,000, why isn't that the end of the matter? Okay. That's an interesting issue. Actually, it wasn't brought up in the district court. It was brought up for the first time on appeal. But what happened in that instance is there was a direct action by the people who had the judgment against the insurance company, and they didn't have a bad faith claim. All they had was a direct action for the $300,000. And Mr. Avila, the defendant, was not involved in that direct action. Sensory National did an offer of judgment for $165,000. The plaintiffs in the underlying action took the offer of judgment, but that was only their direct action claim against Sensory National. They still had a valid judgment against Mr. Avila to pursue. So there was no releases done. There was no other action. So in that case, can Dora still go against the estate? Yes. She still has her judgment. It's still valid. If you collect the $135,000 remainder, she has full claim on that. That's correct. That's correct. Are you, in fact, representing her? I'm sorry? Are you, in fact, representing her in essence on a signed claim or something like that? This claim last year, after the judgment against Sensory National, the offer of judgment, the claim, because the State's attorney was not able to proceed in the Ninth Circuit, is what I've been informed, they assigned their rights, the chosen action, basically, against Sensory National because the Mrs. Rodriguez was the primary creditor of the estate. So as a practical matter, whatever recovery there is, it's going to go to her. Yes. And whatever excess, if there is any excess over the recovery, would then go to the estate. So there is potential for the estate individually as well. But it's as her as a creditor of the estate. So but there has been no release of Mr. Avila. And that, by the way, this was before his death that the offer of judgment was taken against Sensory National. And like I said, there was no reason, if Mr. Avila were to come into any money, that that judgment was still valid and could still be pursued against Mr. Avila individually. And that's why he brought his contract claim and bad faith claim. And that issue was never even raised. There was no issue that he should be dismissed for, you know, satisfaction of the judgment or for a novation of the judgment. So now what we have for this issue is, for some reason, the district court decided that because Mr. Avila died, that the judgment against him was no longer a damage. And the language of the survival statute clearly says otherwise, that that legal liability is a damage, and that that case should, that claim should go forward. And also to clarify, we agree that... Well, counsel, I think you've hit on a significant distinction. The district court did not say that the claim did not survive, did he? He said that, well, the claim may survive, but they have not and cannot establish any damages for this claim. Yes. And the distinction in this case is that Mr. Avila... Was it? What are the damages? Well, the damages, well, first of all, you have to look at cases if Mr. Avila were alive today. That's what their survival statute says. If Mr. Avila has a judgment against him still, his damages are the amount of the judgment against him. And just because Mr. Avila died, so this, according to the survival statute, you'd treat the claim as if he were still alive today. Whatever damages he would be able to recover before he died, when he instituted the case against Century National, would still be damages to the estate. Well, if we follow that analysis, then what, how do we factor in the lack of any resources? Do we assume that he, now that he's, do we assume that he discharged the obligation to the victim in bankruptcy, or? Well, that's an interesting question. There was no bankruptcy, first of all. So the judgment is still valid against the estate, as well as it was against Mr. Avila. There was no bankruptcy. But I did want to hit that because the policy itself says that there's a contractual right to that money, even if there's a bankruptcy, or if Mr. Avila wasn't solvent, that they still have a duty to pay the $300,000. To the victim? It's not clear in the policy. That's generally how it's done. Everybody agrees. But it's not. Well, they're insuring his liability. They're. That's correct. Right. And then his liability is to the victim. Right. But whether they pay him and then he gives it to the victim, the point is they owe $300,000. Insurance companies never do that, in my experience. It's not the general practice. I agree. But it doesn't mean that Mr. Avila doesn't have an enforceable contractual right that that $300,000 be paid. And I'm sorry, does that answer your question on? Well, I'm struggling with the issue where is the proof of damages. Okay. And, well, because Mr. Avila had the damages, everybody agrees the amount — if Mr. Avila paid $300,000 to the victim, if he did he would have to pay $200,000 to the victim.  So it's a different issue. And under Nevada's survival — Does everybody agree to that? I thought they didn't. I thought that their position was that as to the contract damages that he was insolvent then, he's the State's insolvent now, and as long as there's — if either he or the State is never going to have to pay it, then there isn't any liability, is their position. I don't understand to turn on his death, to turn on his insolvency. Yeah, no, the issue was never brought up, if Mr. Avila was alive, that his insolvency would somehow avoid that. In fact, for the contract damages alone, the policy specifically says — I mean, the language is clear as a bell, because insurance companies used to do that. They used to just say, okay, they're insolvent, so we don't have to pay these contractual damages. And then when the States started passing laws saying, no, you can't do that, they started writing that in their policy to prevent that. And it's right in this particular policy. Even if you filed bankruptcy or you're insolvent, we will still pay the $300,000. Well, and that's one reason why the States, most of them, created a direct action against the insurance company once there's a judgment. And that's what your client availed herself of. And she ended up accepting the — she settled that action, that direct action, didn't she? Right. But the issues in this case are the duties the insurance company has to Mr. Avila not to — now, I'm here representing the estate of Manuel Avila today, not representing — I know I have represented Ms. Rodriguez, but I'm not representing her today. I'm representing the estate. But it does seem — I mean, what does seem peculiar about this, and I guess it's where I started, and then you should go into the bad faith issue, is that ultimately their responsibility is not to put money in the pocket of Mr. Avila or his estate, but to pay him to the degree that he's liable to somebody else, or to pay forth his liability to someone else. And it seems odd for the money to be going into his pocket, or his estate's pocket, at this juncture. Well, I don't — that is the goal, actually, to put money in the pocket of the estate. That's why Mr. Avila originally brought — not only to pay the judgment against him, because he wanted — he was distressed that he wasn't able to help this woman. He wanted her compensated fully. But he also wanted to get emotional distress, which is money above the amount of the judgment. And punitive — potential punitive damages in this case as well. And that would put money in the estate. And the estate would still get that money. So the way it goes now, if the money comes in, it still flows through the estate, but because my clients are the main creditors of the estate, they will get their money first before the beneficiaries would get whatever money is left over after the judgment's been paid. So the money would still flow eventually through the estate here. So — Do you want to argue — give us any help on the separate bad faith issue? Yes. The bad faith issue — I mean, the contract is even stronger because of the contract language saying they must pay even if there is insolvency or bankruptcy. For the bad faith, it's the same issue. There's a survival action. For some reason, the district court agreed that there would be a survival action for the emotional distress, but they disregarded the amount of the judgment. And I don't know why that is. The issue that we've primarily discussed today about the payment of $165,000 never came up in front of the district court. It was just brought up on appeal. But the — what I want to address is the emotional distress damages. That's reviewed de novo. And what the district court glommed onto was there was some testimony by Fernando Avila, the son of Manuel Avila, that no doctor had ever told him that his dad had emotional distress because of the payment. But what wasn't cited was — it was because no doctor ever said anything to him. It was just a negative — a void. It wasn't an affirmative — a doctor saying to him, well, by the way, your dad's emotional distress is not caused by the claim. But it was perfectly clear about the fact over and over again that not being able to provide money for Dora was a lot of what was stressing him. That's our position, that it was — it was in the record. It was there. And for whatever reason, that evidence — Well, even if the insurance company had provided him with a defense, how — where's there any proof that there would have been any money paid to the victim during his lifetime? I'm not sure I understand, but there was an offer by the — They could have litigated this case long beyond his death without paying her anything. I'm missing the connection between their denial of coverage and his emotional distress over his inability to pay her money. Good question. There was an offer to settle the case for $300,000 prior to filing a lawsuit against Mr. Avila. When the insurance company refused to pay that, refused to indemnify or defend Mr. Avila, that's why the judgment suddenly became $1.5 million instead of $300,000. And so that's why, for the bad faith section, we're asking for damages not — Was the offer to settle made while he was still alive? Yes. Yeah. Did he — is there any evidence he knew about this? Oh, yes. Yes. He actually was still alive when he filed — Is this evidence before the district court? Yes. Mr. Avila was actually still living when this bad faith action was filed. He filed it himself, and due to his — fortunately, he — it was about three months after he filed the lawsuit that he passed away. On the contract issue, or on both issues, actually, or more than — more likely on the bad faith issue, I gather the major position now of the insurance company is that it was a disputable issue and, therefore, there wasn't bad faith on the merits. That — they did make that argument in front of the district court.  And we're asking for damages now at some length. And we could uphold a summary judgment on that basis without getting to the rest of it, couldn't we? Yes. That's another reason. The district court judge did address that issue in a prior motion, and I think that is in the record as well. He found that just because your language is vague in the contract doesn't make it — that there's no bad faith. And Nevada law is very clear on this. Mr. Bartsch's case, which he cited in his — the district court cited in his order very well and explained that just because you can say, okay, there's a question as to the contract, doesn't mean that the bad faith claim automatically gets invalidated. Insurance companies otherwise — the Nevada Supreme Court said that insurance companies otherwise would be encouraged to write intentionally ambiguous contracts if they could avoid bad faith just by creating a contractual issue because of the language they wrote. Counsel, I'm shifting the focus to the damage issue in regard to the bad faith claim. You've got a person who is claiming emotional damages. Well, actually, you're having others saying that he suffered emotional damages. His testimony was not recorded before his death, was it? No, it was not. All right. So we have — we have a gentleman who was ill. I understand he was also suffering from dementia to some degree. Without medical evidence of the — supporting the claim that he suffered compensable emotional harm, what evidence is there that he did? It's a good question. I think medical evidence would be more of a personal injury type case when you're asking for emotional distress due to personal injuries. But in this particular case, Nevada Supreme Court has found emotional distress due to the denial of a claim is compensable. All right. But it still has to be proved. And that's — I'm asking you how you would prove it — Sure. — without his testimony and without — or without the testimony of one of his physicians — Sure. — who knew him and talked to him and took his history and examined him while he was alive. Good question. The statements of the party are admissible in court, even if it's through his son, for example. So his son said he would become, you know, emotionally distressed. I could barely talk to him. He became so upset about, you know, not being able to help adore for this claim. So it's through the son. There's another daughter, and he has — actually has many, many children, I think. I didn't see any — the daughter actually took care of him, as I understand, during his last illness. And — but I didn't see testimony from her. That's correct. I spoke to the attorney about that, and she said she was — discovery was far from over when this motion was brought. And the issue was actually brought up in a reply. It wasn't brought up in the direct — It was a summary judgment. Yes. It was summary judgment. But it was brought up — Did they — did you ask, or did they ask for additional time for continuance — Yes. — to present this kind of evidence? Yes. She signed an affidavit saying that she would like — and I've put that in my brief, that issue, in my reply brief, exactly, saying that she would like additional time to complete discovery to get that, but the judge didn't — Why would you need — Well, didn't the son say at one point — they asked him about the doctor, and he said, well, I can get you that name for the name of the doctor who had talked — who he had seen for his depression and so on? Yeah. He said he had only spoken to the lung doctor when his father was in the hospital. He didn't actually — so — But he did say something about the father having seen a doctor for depression, and he would get the name. Yes. That's true. Yes. That's additional evidence. All right. Thank you very much. We'll give you two minutes for rebuttal. Thank you. May it please the Court. I think that the Court hit it directly on the head when the question was asked, what are the damages? This is a question that echoes that that was asked by the trial judge in this case. Well, I'm actually not sure — I certainly never asked that question, but go ahead. And it was a question that we had asked. And I think what's being demonstrated — But the damage — I mean, it is not — it is routine, as I understand it, in insurance, that people buy insurance because they may not have enough money to satisfy a claim, and they want to make sure that if they hurt somebody, the person isn't left without any recovery. So even the fact that he himself was not going to be liable for it can't be the lack of damages. If there was a promise to pay, whether you yourself can pay or not, it's not the ultimate question. Does the policy provide for a payment of liability whether or not you're liable? Whether or not you're able to pay the liability. I think what we're talking about is the idea that Mr. Avila wanted to help Dora. Now, that's not what I'm talking about. Are we talking — are you discussing the contract or the motion? Okay. All right. Let's talk about the contract. Absolutely. Ordinarily, in contract law, the damages are for not fulfilling the expectations of the contract. You don't have to show any other damage other than you promised to do X and you didn't do it. Correct. Right? Correct. So in this instance, if you promised him that you would pay for his injury of someone else and you didn't do it, why isn't that the end of the story? Because regardless of what you have, whether it be a breach of contract or whether it be this idea of bad faith, you still have to actually prove damages. And I understand that the — if you look at the actual opposition to our motion for summary judgment on that issue, it's three pages. The only argument that's made is they mentioned specific performance, which I think is really what the Court is getting to, or expectancy damages. The Nevada Supreme Court has recently talked about expectancy damages, and I think it's Dino Electric. I can get the case site. If I make a contract with you that if I give you $1, you'll give me $1,000 and you don't do it, I don't have to prove anything other than you didn't give me the $1,000 and I get the $1,000, right? Because that's a damage to you. And your loss is the $999, because that is the expectation damages. It's giving you the plaintiff. This man has a judgment against him for $1,500,000 and you're not paying him. Which can never be executed. And — But what is the relevance of the — that can never be executed? Because you still have to prove an actual damage. If you go through all of the cases where the courts from around the U.S. say, look, we think that you don't have to pay the judgment before you can sue for this type of bad faith. There's a very specific reason for it in each case. Can we stick to the contract damages first? Okay. All right. On the contract damages. Correct. If you promise that if you're liable for more than — for $300,000, we'll pay $300,000. Is that what you promised? Yes. All right. He's liable for more than $300,000, so you owe him $300,000. Why not? Because we can — and you're talking about the breach portion. Yes. So you can establish a breach, but you still have to establish the damages. And in this case, if we give him $300,000, he didn't lose $300,000. It isn't true expectation damages. I'm not — He actually lost 1.5. He lost 1.5 million. He actually hasn't lost anything. He has a judgment against him. And, you know, there's a — So in other words, if you have a — an impecunious driver who kills somebody, you don't have to pay it because the guy's impecunious. He's not going to lose anything, so you don't have to pay. No. And that's the difference. Because this judgment is always hanging over his head. There can be an execution. It can destroy his credit. It's these collateral damages. Is it because he's dead is why you don't have to pay it? I'm not really understanding what you're saying. It's a combination of both. This is a very strange, unique circumstance where you have the individual who — who dies before his deposition can be taken. It's never — the judgment was never executed. The PMK, the 30B6 of his estate, said it never had any effect on his credit. Let's take my driver analogy, okay? Okay. The guy's driving. He — he kills somebody. He has no money at all. And he dies thereafter. You don't know — you don't have to pay anybody anything. If there's something in his estate, there would be an actual damage. I suppose there's nothing in his estate. Then there is no damage. And there's not — and so the person who — who he killed is just — gets nothing, even though this person was paying you for the insurance all along precisely so that if he killed somebody, that person would — would get money, no? No. And that's exactly why there's the direct cause of action, and that was discussed, the — whether the individual is bankrupt or insolvent, the insurance still pays that damage. And if they don't, there's a direct cause of action, which is exactly what Mr. Vanna's client took advantage of. So you don't. So ultimately, it turns on the fact that he died? I'm having a really hard time. It's not — I think it's because we're coming at it from a different direction. One thing is the question of whether the insurance company owes it. The real question is, was there a damage by — to the plaintiff? And every time the Court asks that, if you look at the three-page opposition to the breach of contract motion or even the nine-page opposition to the bad faith motion, they never present any evidence of an injury or damage. So, Counsel, is it your claim that because Dora brought a direct action against the insurance company that the — that the claim has now been satisfied? As far as the contractual obligation, absolutely. She has waived her ability to — on the direct cause of action or the actual contractual obligation to the injured party. And if you — if we were to look at it any other way, that allows for a double recovery. In other words, Dora can sue us for the $300,000, and then Mr. Avila can turn around and sue us for the $300,000. No, for the excess of the $300,000. That's all he's trying to get. Well, the breach of contract then would be — and that's where it gets awfully sticky, because we're really talking about the breach of contract damage. There's nothing that says he can't sue us for that under the theory that they're pursuing, which is, I expected you to pay this when it was demanded. It wasn't. Therefore, give me my $300,000. The thing that's changed now is he's not going to pass it on to Dora. He's not? He is going to pass it on to Dora. Well, the $300,000, but that element would then go to the excess judgment, because he's responsible for that. But what we're missing here is, in every case where the Court has found that the existence of a judgment is enough of a damage, it's because the individual's been alive, so it either affects their credit, causes them to go into bankruptcy, or they constantly face this problem with execution. Where they have been deceased, the Court has found that there is still a damage because — I — let's suppose I enter into a contract with you that you're going to pay $50,000 to Jones, and I pay you a penny for that. And you don't pay Jones. How am I injured? I'm injured because you didn't pay Jones, as you promised. That's all — my only injury. So your damage would be what you paid me for premiums, if it's a reliance or a — I wasn't even talking insurance. I was just talking in general. Right. But, I mean, your damage would be what you paid for me because I didn't perform. No. My damage is what you promised to do, because that's how contract damages work. You promised me to do X. You didn't do it. You have to do it. Well, that's specific performance, which is far different. Well, you have to pay me the value of the — of the doing it. Only if it's expectancy damages, which has to place you in the same position had I performed. And in this case, let's take Mr. Avila. If we give him the $1.5 million, he is in a better position than had we performed. He never receives that money, and that's exactly the issue. He doesn't get that money. Even under the contract, under the express terms we've agreed to, Mr. Avila never gets $300,000. He never gets $1.5 million. So to give him that money is contrary to contract damages in the first place. And I don't want to get too far away from this, because the really important thing is when asked to provide the damages issue, nothing else was provided. And these arguments that we're hearing today about how a judgment is actually a damage wasn't put before the Court. And it can't be presented now. But it obviously is a damage. I mean — or obviously — I don't know if it's a damage. It obviously is the condition precedent to your responsibility to pay. In other words, he has to have the liability before you have a responsibility to pay, and he has the responsibility — he has the liability, whether he can pay it or not. Correct. All right. What about the emotional distress issue? Well, and this goes back to the question of — this is summary judgment. When a summary judgment motion is made, they have an obligation to come forward with admissible evidence. Under Nevada law, physical manifestation is required to be shown for any emotional distress claim that isn't a part and parcel of a physical injury. And that's Butler v. Reno Air. Even more recently, the Supreme Court has revisited that issue because they kind of have a distrust of these emotional distress damages when it's not part of an injury. And in the Kahn v. Morse-Mowbray matter, said, look, when you have a financial injury, we don't expect emotional distress. Counsel, the type of emotional distress that has been alleged here seems to follow so naturally and so logically — he's accidentally cleaning his gun, he shoots his housekeeper, it doesn't kill her, she loses her baby — but it seems to follow so naturally from that that you wouldn't think that it would take very much in order to be able to prove it. And his son has testified that, among other things, he felt very guilty about not being able to compensate his housekeeper for the injuries that he had caused. So why isn't that sufficient? It's not sufficient for two reasons. One, we're talking about compensation for emotional distress as a result of the actions of Century National, not because he shot his caretaker and killed the unborn child. That's not something that we want to see. That's not what his son said. His son said that, but he also said, and because he couldn't provide for the housekeeper. Which is an interesting idea, and I appreciate this sort of altruistic view of insurance and why people buy it. But flip that on its side. What if Century National — and I think this is a point made by Your Honor — what if Century National had given a defense, had vigorously defended this, and, in fact, defensed the case? Does Mr. Avila still have a cause of action for bad faith because he can no longer help his woman, and that's why he brought this into trial? I mean, that's an issue for trial, I suppose, but that's not the question now. He was denied — he was — you were given summary judgment on the ground that even if proved up, he can't get the emotional distress damages here. No. It was granted because he didn't prove up the emotional distress. I understand that, but now you're saying something else. You're saying, well, maybe it would turn out that he wouldn't have, in fact, been able to provide for her in the long run, so he can't have the emotional distress damages. Well, maybe that's a defense at trial, but I don't — it seems to be a completely different issue than the basis on which the emotional — the bad faith damages were found not available on summary judgment. No. The emotional distress damages were specifically found not available because there was no evidence of the damage, and what — the only thing that was put out there is this idea that we're talking about now as a damage. And the reason I bring up the — that other scenario, even if we had settled it for $100,000 instead of $300,000, that would be the same injury to Mr. Avila. The case in point is, it's not an actual injury because the insurance company is directly within its right to do that. Would he then be injured if we settled it for $100,000? But isn't that argument true in any bad faith insurance claim? I'm sorry? Why isn't this argument available to you in any bad faith insurance claim with regard to emotional stress damages? Because it's always possible that had you defended, you would have won or not paid as much. So therefore, his claim that he's upset because you didn't defend him doesn't — will always be subject to this claim as well. He might have defended you and lost. No, no, no. They might have defended and won. That's what I'm saying. Because his injury is the inability to get money to the door. But that's always the case if you don't defend. You might be able to prove that you could have defended and won. And that's why — that's why this isn't a damage. You can't say I'm damaged or have an injury because I didn't — you didn't pay money to this injured party. So there's never emotional distress damages due in a bad faith claim. Oh, there is. Absolutely there's emotional distress damages if you prove them up. And in these cases, if you look at everything given in the oppositions, there was never a single piece of evidence. And what's important is when he comes back and says, well, maybe the sister who took care of him would have testified differently, this is summary judgment. That's their client. There was no affidavit. If — there's a whole backup problem here, which is as to both the contract claim and the bad faith claim, and even more so with regard to the bad faith claim, you say that this was a disputed issue at least. And so, therefore, it could have been bad faith. And the district court never actually — well, he did reach it, and he denied summary judgment on that ground. You're asking us essentially to reverse that. Correct. And to say that there — that he should have granted summary judgment on that ground. Because this Court can uphold the decision on any basis. And that's — But did you have to file a cross appeal for that? I mean, he actually — it's not really upholding the decision. He said that there wasn't summary judgment on that ground. He actually didn't deny that portion. He granted it on the portion that they had failed to demonstrate any specific damages on either the breach of contract or the bad faith. But I thought he earlier denied a summary judgment on — there's a whole opinion about it. There's an opinion, but he never actually reaches that issue. He discusses it, but never comes down. He says he finds that there's no damage, and then grants our motion. He doesn't grant it partially. In fact, I wish there had been some decision whether he was persuaded by it or not. But at the end of the day, what we have is a very — are two issues in the policy that I think that — to call it a question of fact for the jury, which the judge did, is fine. But it said, is Fernando a resident of Manuel's household? And is Manuel within the household? When we asked the insured, where do you reside, he said California. When we said, who resides at the Nevada house, he said, my father, and listed three other people. He knew what reside meant, and all he had to do was read the policy. Although this is now a question of fact for the jury because of the overexpansive idea that household can mean different things to different people, certainly that vitiates against any unreasonable stance by Century National in this case. And again, going back to this idea that no evidence was presented, Plaintiff's Counsel presented no evidence that would establish that that stance was unreasonable. And I just have to clarify one more thing. I see I'm almost out of time. But the — one of the things that's important is that the request for an extension of time under 56F was not related to the emotional distress damages and went only to the question that we're now discussing about whether or not it was knowingly unreasonable. Kagan. Did you raise the emotional distress damages issue only in reply? Is that correct? I'm sorry? Did you raise the emotional distress damages issue before the reply brief? Yes. It was specifically to the district court never did write an opinion with regard to the contractual terms? Correct. Well, with regard to the Schumacher issue of a genuine dispute. But what about on the contract issue? On the contract issue, they issued a ruling saying that there were no damages and, therefore, the contract claim. No, but did he first earlier write — have any opinion with regard to the question of whether there was coverage? Yes. He said it was a question for the jury because it could go either way. Right. That's what I was asking. Okay. Okay. All right. Thank you. I'm sorry. I wasn't hallucinating after all. Thank you. And there was only one other thing. The — I would note for the Court that the — a reply was placed before the Court as one of the exhibits that included an expert report. That reply was in support of a counter-motion filed by Plaintiff, which is not part of this appeal. The only thing appealed by Plaintiff was the order granting our summary judgment on the contract issue and the order granting our summary judgment on the statute. Thank you very much. Thank you. I'll give you two minutes in rebuttal. The main thing I'd like to emphasize in my rebuttal is that you don't have to get to the issue of what damage there is to the estate in this case, because the Nevada survival statute says that damages can be recovered which the decedent would have recovered if he had lived. So it — Mr. Avila himself filed this lawsuit and then died three months later. The question is, what damages would he have been entitled to cover when he filed that lawsuit? Century National, on appeal for the first time, brings up the issue, well, they waived the right to the rest of the contract because the claimants took the $165,000 offer of judgment. If they persist with that, that's another bad faith argument for the estate, because they didn't take the time to get a release when they handled that for the estate. But if they had litigated this on behalf of Manuel and they had settled with DORA for $165,000, Manuel wouldn't have any claim against them and they don't have to go and get a settlement with him, right? If they had litigated this claim straight up and just said, okay, look, we don't know whether you're a resident or not, this is a close question, we're just going to go ahead and defend the suit, and it doesn't get that far. They enter into settlement and DORA settles out for $165,000. Manuel feels guilty because he doesn't get a full $300,000 that they might have gotten, but so what? That's true, but — You're done, right? You're done at that point. Manuel's done. He carries whatever guilt he has, doesn't have any judgment suffered against him, and he has no cause of action against his insurance company, right? That's true. There were — just so they're clear, there were three separate lawsuits here. The first lawsuit was to get the — was against Mr. Avila to get the judgment of $1.5 million. The second lawsuit — Direct action. Direct action. That was only for the $300,000, and for tactical reasons, you know, people sometimes rather have a bird in the hand than two in the bush, but they still had their claim against Mr. Avila to collect the money from. But Mr. Avila was left unprotected because the insurance company didn't get a release for him during that action. But why isn't there sort of accord and satisfaction just based on the fact that they — that in the direct action, she settled out for $165,000? You know, it's not an issue that's come up, but I don't see why that would — why their action against the insurance company would — In fact, I'm not sure about this, but in a situation in which the kind of judge Bybee posits, if there's a settlement, but without a release against the defendant, could they still go against the defendant? But there wasn't a settlement here. It was actually just a judgment. So there were no terms. I understand that, but I'm looking at Judge Bybee's hypothetical with regard to if they had defended him and she had, in fact, settled, or if they had — if there was a settlement, they could still go against Judge Bybee, and they had settled out, but without a waiver of rights against Manuel. Presumably, they could still have gone against Manuel then, even if they're — If they had released Manuel, the way I took Judge Bybee's — The problem here is they didn't — at least one of the problems is they didn't release Manuel when they entered into the agreement with her. Correct. And the way I took Judge Bybee's hypothetical was in the first lawsuit against Mr. Avila directly. If they had settled that claim, then Mr. Avila would have been released. Failed it with a release. Yeah. He would have had no further liability. If he had settled it without a release, he would still be in the same place. Well, settlement implies that — Implies it. That will be it. But the judgment against the insurance company, though, I think doesn't imply that they're going to release, especially when it's simply an offer of judgment. There's no term saying we're going to release anybody. All right. Thank you both very much. Very interesting case and very useful arguments. Avila v. Century National Insurance Company is submitted. And we'll go to the last case of the day, United States v. Kimsey.
judges: Graham, Berzon, Bybee